UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUMAANE JONES,

    Plaintiff,

v.

WARDEN CAMPBELL et al.,

    Defendants.

Case No. 24-10683
Honorable Laurie J. Michelson

---

## OPINION AND ORDER PARTIALLY DISMISSING AMENDED COMPLAINT [8]

Jumaane Jones alleges that while he was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan, 20 MDOC employees retaliated against him for filing prison grievances and discriminated against him as a Black Buddhist. (*See* ECF Nos. 1, 8.) Jones says Defendants issued him false misconduct tickets, took away his religious meal accommodation, called him racial slurs, physically assaulted him, and threatened that "the harassment would continue and get wors[e]." (ECF No. 8, PageID.42.)

So Jones brought this pro se action under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act, and Michigan tort law. He sues every Defendant in both their individual and official capacities (*see* ECF No. 8, PageID.37, 39–40), for compensatory and punitive damages and injunctive and declaratory relief (*see id.* at PageID.49–53).

For the reasons below, the Court dismisses all claims against Defendant Wagus. Against all remaining Defendants, Jones' individual-capacity damages claims of First Amendment retaliation and free exercise, Eighth Amendment cruel and unusual punishment, and Fourteenth Amendment equal protection may proceed. Against Defendant Campbell only, the following additional claims survive: Jones' individual- and official-capacity § 1983 claims for expungement of his disciplinary convictions and Jones' official-capacity RLUIPA claim also seeking expungement.

## I.

Along with his complaint, Jones filed a motion to proceed without prepayment of the filing fee. (ECF No. 5.) Under 28 U.S.C. § 1915(a)(1), the Court may authorize commencement of an action without prepayment of the filing fee and costs if the plaintiff demonstrates they cannot pay such fees. Chief Magistrate Judge David R. Grand has granted Jones' application to proceed without prepaying costs. (ECF No. 6); *see* 28 U.S.C. § 1915(a)(1).

When a Court grants an application under 28 U.S.C. § 1915, it has an additional responsibility: screen the complaint and decide whether it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

2

In deciding whether a complaint states a claim upon which relief may be granted, the Court must determine whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but the complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A pro se litigant's complaint is to be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But that leniency is "not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The "basic pleading requirements 'apply to self-represented and counseled plaintiffs alike.'" *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). A complaint must "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The Court must assume a plaintiff's factual allegations are true, but it is not required to accept as true allegations that are "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 430 (6th Cir. 2009) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Nor may the Court "conjure up unpleaded facts to support conclusory

3

allegations." *Williams*, 2022 WL 2966395, at *2 (quoting *Perry v. UPS*, 90 F. App'x 860, 861 (6th Cir. 2004)).

## II.

At this stage, the Court accepts as true all of Jones' well-pled factual allegations and presents them as such below. *See Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017).

The events underlying Jones' complaint occurred between November 2023 and mid-January 2024 while he was incarcerated at the Gus Harrison Correctional Facility. He is currently incarcerated at the Macomb Correctional Facility. He sues 20 Michigan Department of Corrections employees: (1) Warden Sherman Campbell; (2) Deputy Warden FNU[1] McRoberts; (3) Assistant Deputy Warden FNU Howard; (4) Lieutenant FNU Roe; Sergeants (5) FNU Thiem and (6) FNU "Mcbrybe"; (7) Food Service Director FNU Perry; (8) Food Service Server "D." Baker; (9) Prison Counselor FNU Alcorta; (10) Chaplin "J." Coats; Corrections Officers (11) FNU Wagus; (12) FNU Vallejo; (13) FNU Krueger; (14) FNU Rombach; (15) FNU Mayfield; (16) FNU Neno; and four John Does—(17) an Assistant Deputy Warden, (18)– (19) two Corrections Officers, and (20) one nurse. (ECF No. 8, PageID.36, 40.)

Jones is Buddhist. (*Id.* at PageID.38.) His religious beliefs require him to maintain a vegetarian diet and "don't allow him to eat at the same table

---

[1] First name unknown

where [a] dead animal has been." (*Id.* at PageID.43; *see id.* at PageID.45.) But "there was no s[ea]ting for the religious guys" in the Gus Harrison chow hall. (*Id.* at PageID.41.) So Jones was given permission to "take [his] religious meals back to the [housing] unit," and he ate in his cell from about August to November 2023 without incident. (*See id.*)

That changed after Jones, for reasons not alleged, started filing grievances "against the religious kitchen" and kitchen staff in November 2023. (*Id.* at PageID.40; *see also id.* at PageID.38 (stating that Jones filed grievances "on the kitchen and it's [sic] staff" as well as "some C/o's [sic]").)

Starting in December, Defendants "made it their business to teach [Jones] a lesson." (*Id.* at PageID.41.) Although Baker was one of the "Food Service Servers" who gave Jones permission to eat in his cell, on December 6 he issued Jones a class II misconduct ticket for trying to take his meal out of the chow hall. (*Id.*) When Jones asked Baker "why was he harassing [Jones] . . . for something he . . . gave [Jones] permission to do," Baker allegedly told Jones "this is for all them grievance[s] [Jones] keep[s] writing" and wrote Jones another misconduct ticket. (*Id.*)

The next time Jones tried to take his meal back to the housing unit (December 8), he was stopped by Corrections Officer Krueger. (*Id.* at PageID.38.) Jones had just seen a white, Jewish inmate "leaving the chow hall with his religious meal" without any hassle. (*Id.* at PageID.41.) Jones

told Krueger that "they was [sic] just targeting [Jones]" and that "this is racial discrimination, [a]nd religion discrimination." (*Id.* at PageID.38.) Krueger responded, "[C]all it what you want" and issued Jones another misconduct ticket. (*Id.*)

Things quickly escalated. According to Jones, throughout December Defendants threw away his religious meals (*see id.* at PageID.42–44), withheld legal services (*see id.* at PageID.47) and medical attention (*see id.* at PageID.44, 48), and physically and verbally threatened and assaulted him (*see id.* at PageID.43, 48–49 (physical); *id.* at PageID.38, 42–45, 47 (verbal)). He also says Defendants would handcuff him and put him in "a small cage" (*id.* at PageID.43) and in segregation "for no reason at all" (*id.* at PageID.46; *see id.* at PageID.42–44, 48). Jones further recounts that Defendants either said they were retaliating against him—for his grievances, his refusal to eat in the chow hall, or later his refusal to eat at all when he went on a hunger strike—or conveyed prejudice toward Jones as a Black Buddhist. (*See id.* at PageID.41–47.) Some Defendants also questioned the sincerity of Jones' religious beliefs (*see id.* at PageID.43, 45) and accused Jones of "just trying to get some money" from a lawsuit (*id.* at PageID.43).

Around December 11, Jones went on a hunger strike. (*Id.* at PageID.44.) Around December 31, his "blood sugar was so low that they had to call the ambulance." (*Id.* at PageID.48.) He was treated at the hospital for

6

a few hours, "brought back to the prison," then "sent . . . back to the hospital" when his blood sugar "drop[ped] back down low again." (*Id.*) He was hospitalized until January 5. (*Id.*)

So in March 2024, Jones brought suit, alleging violations of the Religious Land Use and Institutionalized Persons Act, Michigan tort law, and the First, Eighth, and Fourteenth Amendments.

### III. Dismissal of Wagus

It is a basic pleading requirement that a plaintiff must attribute factual allegations to particular defendants. Each defendant must have "fair notice" of the claim against him and "the grounds upon which it rests." *See Twombly*, 550 U.S. at 555. Thus, when a person is named as a defendant without an allegation of specific misconduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x. 188, 190 (6th Cir. 2004) (dismissing pro se complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing pro se complaint where plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights").

Jones named Corrections Officer FNU Wagus as a defendant without alleging any facts about how this defendant violated his rights. "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough." *Hill v. Michigan*, No. 22-10631, 2022 U.S. Dist. LEXIS 184494, at *5 (E.D. Mich. Oct. 7, 2022) (quoting *Gilmore*, 92 F. App'x at 190). So all claims against Wagus are dismissed, and Wagus is dismissed from this case.

### IV. Section 1983

Jones' brings many constitutional claims under 42 U.S.C. § 1983. Under the First Amendment, he brings First Amendment free exercise and retaliation claims, respectively alleging that Defendants substantially burdened his religious dietary beliefs and retaliated against him for his protected conduct of filing grievances. (*See* ECF No. 8, PageID.36, 50.) Under the Eighth Amendment, he alleges that Defendants inflicted cruel and unusual punishment—by harassing, threatening, and abusing him, including by subjecting him to punitive measures such as confinement in segregation and in "a small cage" while handcuffed—and that they did so because of the grievances he filed and because of his race and religion. (*See id.* at PageID.36–37, 43, 49, 52.) Finally, Jones asserts violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses. (*See id.* at PageID.37.) He says Defendants intimidated, harassed, and abused him

8

because of his race and religion (*see id.* at PageID.49) and accommodated others' religious dietary restrictions but not his (*see id.* at PageID.38, 41). As to procedural due process, Jones says Defendants issued him unfounded misconduct tickets (*see id.* at PageID.38, 42, 45), found him guilty on those tickets without telling him his charges or providing advance notice before his hearing, then disciplined him for the alleged misconduct by placing him in segregation (*see id.* at PageID.45–46).

Jones' Fourteenth Amendment procedural due process claims and official-capacity damages claims are dismissed against all Defendants. Jones' claims for injunctive and declaratory relief are also dismissed against each Defendant but Campbell. Jones' claim seeking expungement of his disciplinary record may proceed against Campbell.

## A. Fourteenth Amendment Due Process

To state a federal civil rights claim under § 1983, Jones must set forth facts establishing that a person acting under color of state law deprived him of a right secured by the federal Constitution or laws. *See, e.g.*, *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015).

And to state a procedural due process claim under § 1983, Jones must plausibly allege that he was deprived of a life, liberty, or property interest protected under the Due Process Clause without adequate process. *See, e.g.*, *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999); *Bd. of Regents of State*

*Colls. v. Roth*, 408 U.S. 564, 572, 577 (1972). In other words, Jones must show both (1) the existence of a constitutionally protected right and (2) the deprivation of that right without due process. *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) ("A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered."); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]hose who seek to invoke [the Due Process Clause's] procedural protection must establish that one of these interests [i.e., life, liberty, or property] is at stake.").

As an initial matter, Jones' claim that Defendants violated his procedural due process rights simply by issuing unfounded misconduct tickets must be dismissed. There is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003).

That said, if misconduct accusations might lead to discipline that could deprive an incarcerated person of a protected liberty interest, then he is entitled to due process before that discipline and deprivation can occur. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Moore v. Hofbauer*, 144 F. Supp. 2d 877, 884 (E.D. Mich. 2001) (explaining that an incarcerated person is entitled to the "minimum requirements of procedural due process" when facing a prison disciplinary hearing that could deprive them of a protected

liberty interest (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). So the first question is whether the misconduct charges against Jones threatened such a deprivation. *See Heard v. Caruso*, 351 F. App'x 1, 9 (6th Cir. 2009) ("If a prisoner establishes a protected liberty interest, the next question is whether the state afforded the inmate sufficient process."); *see also Bell v. Washington*, No. 22-2132, 2023 U.S. App. LEXIS 25997, *13 (6th Cir. Sept. 29, 2023) ("[A] prisoner does not have a procedural right to due process at a hearing unless the disciplinary action implicates a protected interest, such as when a prisoner is facing the loss of good-time credits.").

"A prison disciplinary proceeding does not give rise to a protected liberty interest unless" either "the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" *McMillan*, 136 F. App'x at 820 (quoting *Sandin*, 515 U.S. at 484), or "the State's action will inevitably affect the duration of his sentence," *Sandin*, 515 U.S. at 487; *see Lawson v. Davids*, No. 23-776, 2024 U.S. Dist. LEXIS 38937, at *54–55 (W.D. Mich. Mar. 6, 2024) ("[A] misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement." (citing *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011))).

Jones does not allege that the results of his prison disciplinary proceedings would inevitably affect his sentence duration. *See Lawson*, 2024 U.S. Dist. LEXIS 38937, at *52–55. He does not suggest, for example, that his misconduct convictions cost him good-conduct credits. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a due process claim fails unless a prison misconduct conviction results in an extension of one's sentence or some other atypical hardship); *Taylor v. Larson*, 505 F. App'x 475, 478 (6th Cir. 2012) (per curiam) (on screening, concluding that incarcerated plaintiff was not entitled to notice and a hearing prior to four-day confinement in segregation where confinement did not affect a parole decision or result in loss of good-time credits); *Sandin*, 515 U.S. at 485–87.

Nor did it amount to atypical, significant deprivation when Jones was placed in a small cell or in segregation. "Administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Joseph v. Curtin*, 410 F. App'x 865, 867–68 (6th Cir. 2010) (internal quotation marks omitted); *see Finley v. Huss*, 102 F.4th 789, 812 (6th Cir. 2024) ("Generally speaking, inmates lack protected liberty interests in avoiding administrative segregation."). To determine whether placement in segregation "nonetheless imposes atypical and significant hardship," *Sandin*, 515 U.S. at 484, courts consider the duration and nature of the confinement, *see Harden-Bey v. Rutter*, 524 F.3d 789, 793

(6th Cir. 2008). Jones suggests he was in segregation for single-day periods (*see* ECF No. 8, PageID.42–44, 48) and at most a three-day period after his disciplinary hearing (*see id.* at PageID.45–46). He also says he was placed in a "small cage" or "holding cage" and on a few occasions "left in cuffs" for short periods of under a day. (*See id.* at PageID.42–43.) This is not enough to implicate a protected liberty interest. *See Sandin*, 515 U.S. at 486 (holding that 30-day confinement in segregation was not atypical and significant); *Joseph*, 410 F. App'x at 868 (concluding on screening that "nothing in [plaintiff's] complaint" suggested that 61 days in segregation was atypical and significant); *Lawson*, 2024 U.S. Dist. LEXIS 38937, at \*56 (collecting cases) ("Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant."); *Harden-Bey*, 524 F.3d at 793 (suggesting that indefinite confinement in segregation could create a cognizable liberty interest).

So Jones has not shown a protected liberty interest was at stake. Thus, he was not due any procedural safeguards in relation to his misconduct charges or convictions. *See Pann*, 2024 U.S. App. LEXIS 5832, at \*7 ("[A]ny procedural improprieties as to [incarcerated plaintiff's] various hearings were not actionable because a prisoner does not have a procedural right to due process at a hearing unless the hearing implicates a protected interest . . . .").

What is more, Jones concedes he was given a disciplinary hearing (ECF No. 8, PageID.45, 52) before his longest period of segregation of three days (*see id.* at PageID. PageID.45–46). So even assuming Defendants' alleged conduct implicated a liberty interest, Jones would still fail to state a claim. *See McMillan*, 136 F. App'x at 820 ("Even if McMillan had a liberty interest in remaining free from lock up, loss of package privileges, and a fine, his due process right was fulfilled by his disciplinary hearing."); *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Jackson v. Madery*, 158 F. App'x 656, 662–63 ("Jackson was provided due process hearings for the misconduct charges; as such, his due process rights were not violated and he may not maintain a § 1983 claim for the allegedly false misconduct reports."); *Robinson v. St. Clair Cty. Jail*, No. 20-11342, 2020 U.S. Dist. LEXIS 108523, at *7 (E.D. Mich. June 22, 2020) ("Plaintiff has not alleged that he suffered any actionable harm. Despite the alleged lack of timely notice, plaintiff was able to present a defense on both misconduct charges.").

Because he fails to state a claim, Jones' procedural due process claims under the Fourteenth Amendment are dismissed.

## B. Official-Capacity Claims

Jones sues all Defendants in both their official and individual capacities for monetary and injunctive relief. As to damages, only Jones' individual-capacity claims survive screening; his official-capacity claims are barred by Eleventh Amendment sovereign immunity. And because they concern only past conduct, Jones' claims for injunctive and declaratory relief are dismissed—with one exception. Jones' claim against Defendant Campbell for expungement of his disciplinary record may proceed.

### 1. Monetary Damages

"Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent." *Lawson*, 2024 U.S. Dist. LEXIS 38937, at *27 (citing *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that an official-capacity suit against a state official "is no different from a suit against the State itself"). So by suing Defendants in their official capacities, Jones has effectively sued MDOC under § 1983. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

But under the Eleventh Amendment, the states and their departments are immune from suit in federal court unless a state waives its immunity (waiver) or Congress removes it by statute (abrogation). *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt . . . that suit against [a] State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit."); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). It is well established that the State of Michigan has not consented to civil rights suits in federal court, *see Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986), and that Congress has not abrogated sovereign immunity for § 1983 suits, *Quern v. Jordan*, 440 U.S. 332, 341–42 (1979). Indeed, "[i]n numerous opinions, . . . the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment." *Lawson*, 2024 U.S. Dist. LEXIS 38937, at *28 (citing *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010)).

Because Defendants are immune, Jones' official-capacity claims for compensatory and punitive damages are dismissed. Only Jones' damages claims against Defendants in their personal capacities remain.

16

## 2. Injunctive Relief

Jones also seeks declaratory and injunctive relief. He specifically requests "corrective action" and "[e]nforcement [of] and compliance with [MDOC] Policy Directives . . . [and] Work Rules." (ECF No. 8, PageID.49.) Against Defendant Warden Campbell only, Jones seeks "[r]elease . . . from punitive sanctions with restoration of all rights and privileges" and "[e]xpunge[ment] [of his] disciplinary convictions . . . from [his] institutional record." (*Id.* at PageID.52.)

The Eleventh Amendment does not bar official-capacity civil rights suits "when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))); *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908). Only Jones' request that Warden Campbell expunge his disciplinary record falls within this exception to the general rule.[2] *See Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024) ("We have held that expunging

---

[2] From Campbell, Jones also requests "restoration of all rights and privileges." (ECF No. 8, PageID.52.) But he does not allege any rights or privileges lost. Instead, it appears that Jones either uses the phrase as a catch-all, similar to his request for "such other relief as it may appear the plaintiff is entitled" (*id.* at PageID.53), or intends to refer to any loss of privileges associated with his misconduct convictions (*see id.* at PageID.52). Either way, this injunctive claim cannot proceed. If it is an independent claim for relief, it is unsupported by any factual allegations. If it is part of Jones' claim for expungement of his disciplinary record, the effect is the same: only the expungement request survives screening.

disciplinary records is, as a practical matter, prospective relief."); *Wolfel v. Morris*, 972 F.2d 712, 719 (explaining that an injunction expunging prison disciplinary convictions is permitted under § 1983 because it "prevents the prison system from considering the discipline . . . as part of the inmates' records in the future" and is thus prospective; *cf. Phillips v. Price*, No. 19-185 2021 U.S. Dist. LEXIS 152734, at *9 (E.D. Ky. Aug. 13, 2021) ("Thus, because Plaintiff seeks prospective injunctive relief in the form of the reinstatement of his visitation rights (which he alleges were revoked in violation of his constitutional rights), his claims for injunctive relief against the Defendants in their official capacities are not barred by the Eleventh Amendment.").

The rest of Jones' claims for injunctive and declaratory relief, other than the expungement claims, must be dismissed. Jones is no longer incarcerated at the Gus Harrison Correctional Facility, where the alleged constitutional violations occurred. And the Sixth Circuit has held that an incarcerated person's transfer to another correctional facility moots their claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Alexander v. Carrick*, 31 F. App'x 176, 178 (6th Cir. 2002) (collecting cases). This is because a plaintiff seeking an injunction must show "present ongoing" or "imminent future" injury. *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (per curiam); *see Mikel v. Quin*, 58 F.4th 252, 258 (6th Cir. 2023) ("Injuries are 'present' when they

18

have already come about, and 'imminent' when they are certain or perhaps substantially likely to occur in the future."). Being transferred to another facility generally prevents ongoing or future injury by removing the plaintiff from the custody and control of the defendants. *See Alexander*, 31 F. App'x at 178.

True, Jones says that one defendant, Howard, was transferred from Gus Harrison to Macomb Correctional Facility, where Jones is currently incarcerated. (*See* ECF No. 8, PageID.40 ("A[ssistant] D[eputy] W[arden] Howard has transferred from ARF to MRF and now is Deputy Warden Howard.").) But nothing in Jones' complaint suggests ongoing or future constitutional violations—by any defendant, Howard included. Instead, Jones alleges only past harm, which injunctive relief would not redress. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (explaining that incarcerated plaintiff's claims for declaratory and injunctive relief were mooted by his transfer where plaintiff alleged he was denied kosher meals at his prior facility); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

In sum, all claims seeking injunctive and declaratory relief from Defendants, whether in their official or individual capacities, are dismissed,

except for Jones' claims against Campbell for expungement of his disciplinary record.

## V. RLUIPA

Next, Jones' RLUIPA claims are dismissed against all Defendants but Campbell. Against Campbell in his official capacity, Jones' expungement request may proceed.

RLUIPA protects the exercise of religion by incarcerated persons. *See* 42 U.S.C. §§ 2000cc-1(a), 2000cc-3(g). Under the statute, incarcerated individuals have a private cause of action against any "governmental entity" or "person acting under color of State law," *id.* § 2000cc-5(4)(A), who imposes a "substantial burden on the[ir] religious exercise" that is not the least restrictive means of furthering a compelling governmental interest, *id.* §§ 2000cc-1(a) (statutory proscription), 2000cc-5(4)(A) (defining "government"); *see Sossamon v. Texas* (*Sossamon I*), 563 U.S. 277, 277 (2011) ("[RLUIPA] provides an express private cause of action for 'appropriate relief against a government,' including . . . their . . . officers[] and persons acting under color of state law." (internal citations omitted)).

But state officials cannot be sued in their individual capacities under RLUIPA. *See Muhammad v. King*, No. 23-1306, 2024 U.S. Dist. LEXIS 57483, at *13 (W.D. Mich. Mar. 29, 2024) (citing *Sossamon v. Lone Star State of Texas*, 590 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon I*, 563 U.S. 277;

*Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013)). Nor does RLUIPA permit claims for money damages. *See Muhammad*, 2024 U.S. Dist. LEXIS 57483, at *13. Although "[a] person may assert a violation of [RLUIPA] . . . and obtain appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), "appropriate relief" does not include money damages, *see Sossamon I*, 563 U.S. at 293 ("States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA . . . ."); *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (concluding that plaintiff's RLUIPA claim for damages against state official in her official capacity was barred by Eleventh Amendment because it was equivalent to a damages claim against the State of Michigan).

So Jones' damages claims and individual-capacity claims under RLUIPA are all dismissed.

That leaves only Jones' official-capacity claims for equitable relief. The outcome here is the same as under § 1983: only Jones' expungement claim against Campbell survives. The rest of Jones' RLUIPA claims for injunctive and declaratory relief are "directed specifically at" Jones' former facility and its staff, so they were mooted by Jones' transfer out of Gus Harrison. *See Colvin*, 605 F.3d at 289 (finding incarcerated plaintiff's RLUIPA claims for declaratory and injunctive relief were moot because they were "directed

specifically at [the prior facility's] policies and procedures and were not targeted at the MDOC kosher-meal program as a whole"); *Heyward v. Cooper*, 88 F.4th 648, 657 (same, where claims were directed at prior facility's officials and not the state corrections department "as a whole"); *Muhammad*, 2024 U.S. Dist. LEXIS 57483, at *15 ("[Plaintiff] has not alleged any facts to suggest that the prohibition against wearing kufis is an issue [where he is currently incarcerated]. Under these circumstances, Plaintiff has failed to allege sufficient facts to show a continuing violation of federal law, and thus, no basis exists for granting either injunctive or declaratory relief."); *see also Cardinal v. Metrish*, 564 F.3d 794, 798–99 (6th Cir. 2009).

## VI. Michigan Law Claim

Finally, Jones' allegation of intentional infliction of emotional distress under Michigan law is dismissed for failure to state a claim.

Under Michigan law, a plaintiff asserting an IIED claim must plead four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Oliver v. City of Berkley*, 261 F. Supp. 2d 870, 885 (E.D. Mich. 2003) (citing *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. 1999)). Jones fails to plead any facts addressing, let alone satisfying, the fourth element. Other than an oblique reference to requesting "mental health" on December 12, 2023, after he was taken to segregation, the

complaint says nothing about severe emotional distress. So Jones' IIED claim is dismissed.

## VII.

For the reasons above, the Court DISMISSES all claims against Defendant Wagus. Against all remaining Defendants (Campbell, McRoberts, Howard, Roe, Thiem, Mcbrybe, Perry, Baker, Vallejo, Krueger, Rombach, Mayfield, Neno, Alcorta, Coats, Assistant Deputy Warden Doe, Corrections Officers Does, and nurse Doe), the Court DISMISSES Jones' Fourteenth Amendment procedural due process claims; Jones' official-capacity claims for damages under § 1983; Jones' official- and personal-capacity claims for damages under RLUIPA; and Jones' intentional infliction of emotional distress claim  Against everyone but Campbell, the Court also DISMISSES Jones' official- and personal-capacity claims for injunctive and declaratory relief under § 1983 and under RLUIPA.

Thus, the surviving claims are the following:

- Section 1983: First Amendment retaliation, First Amendment free exercise, Eighth Amendment cruel and unusual punishment, Fourteenth Amendment equal protection (Dismissed: Fourteenth Amendment procedural due process)

  - Relief sought: Damages against Defendants in their individual capacities (Dismissed: Damages against Defendants in their

23

official capacities); Injunctive relief in the form of expungement of prison record only against Campbell, in either his official or individual capacity (Dismissed: Injunctive and declaratory relief in all other forms against all Defendants in either capacity)

- RLUIPA: Injunctive relief in the form of expungement of prison record only against Campbell in his official capacity (Dismissed: Injunctive and declaratory relief in all other forms against all Defendants, damages against all Defendants)

SO ORDERED.

Dated: July 1, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE